REASIN JORDAN *v.* J. R. CALDWELL, ET AL.

[Abstract Kentucky Law Reporter, Vol. 4—892.]

**For Evidence**

Held insufficient to establish the identity of a person as claimant of an estate after many years of absence, see the opinion.

**Construction of Evidence.**

   Where a person claiming an estate as a son is unable when a witness for himself to name the schools he attended when a boy, the names of any of his teachers or playmates, or names of places or events except those occurring or of which he gained knowledge after he was twenty-seven years old, such failure will cast suspicion as to. his indentity, for it is the rule among adults that they have knowledge and recollection of facts occurring during childhood.

### APPEAL FROM MERCER CIRCUIT COURT. .

### April 21, 1883.

OPINION BY JUDGE PRYOR:

Peter Jordan died in the county of Mercer in the year 1848, leaving surviving him several children. His estate consisted of land, slaves and personalty, and was divided between his children. To one of his sons, called Reasin Jordan, was allotted some land, a slave by the name of Humphrey and his interest in the personal estate. This son, Reasin Jordan, was born in the year 1805, and left his father's home in 1832, and, as is claimed by him, began business in life as a horse-trainer and race-rider on the race courses of Kentucky. After he left in 1832 his other brothers and members of the same family seem not to have been aware of his presence in Kentucky at any subsequent period.

His brother, Peter Jordan, who was one of the executors, hired the slave, Humphrey, out for five years and collected the hire and then sold him for $1,000. In the year 1873 Clara Jane Caldwell and her husband, J. R. Caldwell, of the state of Iowa, filed a petition in the Mercer Circuit Court, against the executors of Peter Jordan, in which it is alleged that Reasin Jordan is dead and that Clara Caldwell is his only child and entitled to his estate, to which the executors responded denying their liability, and also traversing the allegation that Clara was the daughter of Reasin and maintaining that Reasin Jordan was still alive.

The executors, as well as those representing Clara Caldwell, all concede that Reasin Jordan went to California in or about the year 1849, and the executors having had advertisements inserted in California newspapers making inquiry for Reasin Jordan, who left Mercer county in the year 1832, one Reasin Jordan, of San Jose,

California, claimed to be the son of Peter Jordan, of Mercer county Kentucky, and asserted his right to the estate. Upon the issue as to whether Reasin Jordan of San Jose was the son of Peter Jordan of Mercer county, Kentucky, the cause was submitted, and the chancellor adjudged adverse to his claim, and gave the estate to Mrs. Caldwell, the proof conducing to show in his opinion that she was the daughter of Reasin Jordan, and that her father was dead.

The evidence of identity as to Reasin Jordan would leave but little doubt in the mind of the court as to his right to the estate but for the proof on the side of the appellee. The deposition of Reasin Jordan, of San Jose, is taken in the case, and from that deposition it appears that he was in Kentucky from the year 1832 until he left for California, riding and training horses; that when he left Mercer county he went to Crab Orchard and from there to Mt. Sterling and to Bath county. He took a drove of horses to the south for Bascomb whilst in Bath, knew Col. Tom. Young, Turpin and others living in Bath or Montgomery, and gives the names of the horses he rode and the races won.

That the Reasin Jordan was in Kentucky and trained horses, and was about Mt. Sterling, Crab Orchard and Owingsville as a horse-trainer from 1833 and for many years after, there is no doubt. Chief Justice Wallace of California lived at Mt. Sterling when a young man and knew Reasin Jordan in Kentucky at that date, and he is the same man now in California. This is shown by the deposition of Judge Wallace who was at the time of his deposition Chief Justice of California, and by James Farris who knew him in Kentucky and had known him in California. His description answers the description of the man when he left Mercer county, but these witnesses knew nothing of his birth or parentage. Two of the associates of Reasin Jordan in Mercer county, who lived there, say that he was fond of race riding and had heard of his riding races about the state. He told Williamson of California as early as 1856 that he was born near Harrodsburg, and he has often heard him talk of a race horse named Camden. The Reasin Jordan of Harrodsburg had three or four brothers and one sister. The Reasin Jordan testifying gives the names of these children as his brothers and sister; the day of the month·as well as the year in which each was born with as much certainty as if he had the family record before him; but while his recollection is so perfect in regard to these matters, he is entirely

oblivous to the events of his early childhood and fails to recollect the names of his associates, his school-teacher, or the prominent citizens of Harrodsburg or those living in the county. He recollects a preacher of the Christian church called Buccaneer John Smith, an eminent divine of his day, but who doubtless was oftener at Mt. Sterling than at Harrodsburg. He was from the testimony twenty-seven or twenty-eight years old when he left Mercer county, and with a man of ordinary intellect there is no reason why he should remember the names of so many of his acquaintances in Bath and Montgomery counties and forget the names of those with whom he associated in Mercer, not even recollecting the maiden name of his mother. He says that he married above Louisville in the state of Ohio a Miss Freeman; left for California in 1849; left his wife at Independence, Missouri, and returned taking her to California where he has since resided, with his wife still living and several children. He states also that he never was in Iowa, and never married but the one time.

The appellee claims that Reasin Jordan of Mercer county, Kentucky, married her mother in Iowa at the home of J. B. Cornstock in the year 1843; that she was born in October, 1846, and her mother died in January, 1849, and she is the only child living, the other child, a boy, having died in infancy. Cornstock proves that Reasin Jordan or a man by that name married the mother of the appellee at his house in the northeast corner of Davis county, Iowa, in the year 1843; that he first knew Reasin Jordan in 1837. He said his father's name was Peter Jordan and resided in Mercer county, Kentucky. He left this child, Mrs. Caldwell, with Cornstock when he started for California and he has never heard of him but once since, and that was from a man by the name of Gardner who saw him in California in 1851; that he has written to him and to others making inquiry concerning him, but has heard nothing since 1851. When he left for California he supposed he was about forty-three years old, and was of very intemperate habits. In July, 1862, he went to Kentucky and attempted to settle with the executors, and the excuse for not paying the money belonging to appellee was that they could not obtain the funds. Witness was her guardian. The executors promised to raise the money and forward it to witness, but failed to do so. Peter Jordan, a brother of Reasin Jordan, of Mercer county, states that his brother left Mercer county in the year 1833 and went

to Iowa, from there he went to Gallena to the lead mines and then returned to Iowa and from there to California in the spring of 1849; his brother, John, went with him to California and remained there five years and returned. This witness says he saw his brother in Iowa in 1839, and in 1843 Reasin resided on his own farm near the line between Vanburen and Davis county. John Jordan, the brother, was with Reasin in San Francisco in 1851 or 1852, but is reticent as to his marriage in Iowa, and is evidently attempting to show by his testimony that his brother is still alive but that he is not the same Reasin Jordan claiming the estate. Garrett Jordan, another brother, says that Reasin went from Iowa to California in 1849 or 1850 and that the last time he saw his brother was in the year 1848 in the state of Iowa. It is also shown by three witnesses residing in California that they saw a man calling himself Reasin Jordan in search of employment and that he said to them he had left his family in Iowa. This was many years before this action was instituted.

The brothers of Reasin Jordan can not be mistaken as to his having lived in Iowa and it is unreasonable to believe that this brother could have lived at Crab Orchard, Mt. Sterling, Owingsville and other places in Kentucky for seven or eight years and his entire family in ignorance of the fact, or that they would on oath fix his residence in Iowa for the purpose of depriving him of his estate and giving it to a stranger. It may be regarded as singular that these brothers never knew of, or rather make no statement as to his marriage in Iowa. They are not asked the question but evidently regarded his marriage there as established, and are seeking to defeat the recovery upon the ground that their brother is still living. That Reasin Jordan who claimed to be from Kentucky married the mother of the appellee in Iowa is shown not only by Cornstock but by several other witnesses, giving the time and place of the marriage and the name of the justice performing the ceremony.

That the appellant here was in Kentucky and lived here up to 1849 is, we think, clearly proved by his own testimony, at least; but the facts of this record lead us to conclude that he is not the son of Peter Jordan of Mercer county, and is therefore not entitled to the estate. We are strengthened in this conclusion by the fact that his appearance in Kentucky at any time since this controversy commenced would have determined the issue for him if he is the real party in interest, or if not in a condition to travel, his identity by

those who knew him while in Mercer county (if he ever lived there) could be established, and the amount in controversy would have justified the expenditure of a sum of money sufficient to make that certain for him which is now upon this record conclusive against him.

The only doubt about this case from the proof is as to the death of Reasin Jordan. There are facts conducing to show that Reasin Jordan of Mercer county is still alive, but the executors are not appealing, and if they had the doubt would have resulted in favor of the claim of appellee. Whether there was a family of Jordans living in Bath or Montgomery counties does not appear, but it is evident that the claimant in this case lived there for years, and it is a little remarkable that the testimony of some of the old residents of those counties was not taken by the appellant. It would be uncharitable to suppose that appellant left Kentucky, married in Iowa, and then again in California. His own testimony refutes that idea, and besides he shows his marriage in Ohio by other witnesses, and if true these conflicting statements can not be reconciled upon the idea of his having twice married, and the only legitimate conclusion from the facts is that appellant is not the Reasin Jordan of Mercer county, Kentucky. Judgment *affirmed.*

*E. H. Gaither, Morton & Parker, for appellant.*

*E. W. Hines, for appellees.*